Steven Michael
**THIBEADEAU, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–86–142 CR.**

Court of Appeals of Texas,
Beaumont.

Oct. 14, 1987.

Discretionary Review Granted
Feb. 3, 1988.

William E. Hall, Jr. and George E. Renneberg, Law Offices of William E. Hall, Jr., Conroe, for appellant.

Michael R. Little, Dist. Atty. and Steve Greene, Asst. Dist. Atty., Liberty, for appellee.

## OPINION

BROOKSHIRE, Justice.

The Appellant was convicted for the possession of cocaine of less than 400 grams but at least 28 grams. He had pleaded not guilty but the jury's verdict was guilty. The sentence was 20 years confinement

and a fine of $10,000. Appellant briefs and argues nine points of error.

The first alleged error challenged the failure to suppress the "fruit of an illegal search." The record demonstrates that, on August 2, 1985, the Appellant was stopped for violating the speeding laws. The officer was Trooper Ramirez and he clocked the speed of the car Appellant was driving at 69 miles per hour. In the duration of the traffic stop, the trooper detected the smell of marihuana when a passenger, who was the owner of the vehicle, approached. The trooper testified that he detected a strong odor of what he believed was marihuana and that he had occasion to smell marihuana on prior occasions. He described these occasions as many. The trooper approached the vehicle from the passenger's side door and, looking into the vehicle, he noticed marihuana particles, some marihuana seeds and a green, leafy substance on the floorboard. Ramirez then asked who was the owner and the Appellant pointed out the passenger as the owner. The owner gave permission and consent to search the vehicle. Later, Ramirez went to the driver's side and opened the front door. During the course of the search, the officer found what appeared to be a white, powdery substance from behind the right front dash of the vehicle. The white, powdery substance, upon infrared spectrophotometric test, was found to contain cocaine. The Appellant disclaimed any knowledge of the cocaine.

 The State introduced its Exhibit 4, which resulted from a prior in-court appearance of the passenger, Johannes Minzinga. Minzinga acknowledged that he had signed and swore to the truth of Exhibit 4 and, in fact, he had sworn that everything in that document was true and correct and that he had sworn to same in open court, being a District Court. At the prior court appearance, he swore that he had intentionally and knowingly possessed a controlled substance, being cocaine. He stated further:

"I further stipulate and confess that Steven Michael Thibeadeau committed this offense along with me."

This State's Exhibit 4 went into evidence without objection. We decide that the stop was proper and that Trooper Ramirez had a right to search the passenger's and driver's compartments of the vehicle since he smelled marihuana and observed small portions of marihuana on the floorboard of the car. We think he had this right, basically, for two reasons. One reason was to protect his own personal security and safety. This was especially true because the driver and passenger would not stay up in front of the vehicle where the officer had requested them to remain. Secondly, we think that the search was reasonable when the trooper saw the small amounts of marihuana seeds and leafy substances on the floorboard to prevent the destruction of evidence. Trooper Ramirez was in the process of writing a traffic ticket for speeding when he smelled the odor of marihuana. Upon the actual entry into the vehicle, Trooper Ramirez again smelled the odor of marihuana inside the passenger compartment of the car. While the trooper was searching the vehicle from the left, front door, both the Appellant and the owner kept walking towards the passenger side to look inside to see where the officer was searching and both of them did this. Again, the officer had to ask them to step to the front of the car. When the officer picked up the white substance, after it had fallen to the floor from behind the dash, both the Appellant and the passenger-owner had walked towards the passenger side door. The officer testified that when he picked up this baggie of white, powdery substance both the Appellant and the passenger-owner immediately had a look of disappointment on their faces. Since Trooper Ramirez lawfully stopped the Appellant for speeding, he had reasonable probable cause to inspect the driver's and passenger's compartments of the vehicle after he smelled marihuana when Minzinga approached him. *Leonard v. State*, 496 S.W.2d 576 (Tex.Crim.App.1973). Additionally, the officer obtained the owner's permission to search the vehicle, even though reasonable probable cause existed without the affirmative consent of the owner. No evidence of coercion or threats by the offi-

cer, in obtaining the permission and consent to search, is shown. *Lopez v. State,* 663 S.W.2d 587 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd). We overrule Appellant's first contention.

■ Nor do we perceive that error was committed when Tom Davenport, being a narcotics officer of some years experience, testified to the value of the cocaine as well as to how many persons could get "high" from the amount of the cocaine in this case. The amount of cocaine was said to be 82.63 grams or 2.9 ounces of 25–percent pure cocaine. Such testimony realistically conveys to the fact finders the amount of the contraband and its effects on persons in terms that are understandable. *Kemner v. State,* 589 S.W.2d 403 (Tex.Crim.App.1979). Simply put, this sort of testimony has a relevance and materiality in that it interprets and translates the amount of the drug in terms that are easily comprehended by the jury rather than speaking of grams and quarter ounces and measurements of that sort, usually in the metric system.

■ Appellant next complains that the trial court erred in overruling his motion for instructed verdict at the conclusion of the State's case in chief. Under the record, as presented by the State's case in chief, we think that there was no error. We do not reach that point because, after the State rested, the Appellant placed on the stand Johannes Minzinga. The Appellant also testified. Any possible error in overruling the Appellant's motion for instructed verdict was not only waived but, under the testimony and the impeachment of Minzinga, the matter was cured. *Kuykendall v. State,* 609 S.W.2d 791 (Tex.Crim.App.1980) and *Shirley v. State,* 501 S.W.2d 635 (Tex. Crim.App.1973). Point of error number three is overruled.

■ Minzinga was cross-examined about a prior statement which was made in open court, being State's Exhibit 4. He acknowledged his own signature and his attorney's signature. He affirmed that he had sworn to the truth of the statement before one Robin Catchings, Deputy District Clerk of Liberty County. But Minzinga took the position that the Appellant did

not know about the cocaine. In view of this state of the record, the Court warned Minzinga that, under the penalties of perjury, he could be indicted, or reindicted, for aggravated perjury; and, if convicted, the witness could spend considerable time in the penitentiary. No objection was made by the Appellant at the time of this admonition or warning. Thereafter, numerous questions were asked of Minzinga on cross-examination. In fact, later, the attorney for the Appellant had a number of questions on redirect examination directed towards Minzinga. Since counsel for the accused did not timely object to this admonition, any valid objection was waived. *Hovila v. State,* 562 S.W.2d 243 (Tex.Crim.App. 1978); *Joshlin v. State,* 488 S.W.2d 773 (Tex.Crim.App.1973); and *Barnes v. State,* 634 S.W.2d 25 (Tex.App.—Beaumont 1982, no pet.).

■ We decide that the State's Exhibit 4, which was a prior statement made in court, was a proper means of the impeachment of Minzinga. From this record there is no showing that this evidence was contrived or manufactured by the State.

■ The Appellant had a second motion for instructed verdict which was overruled. This motion was urged at the close of the evidence on the guilt or innocence stage.

We have reviewed the record. We are to look at the evidence in a light that is most favorable to the verdict. *Houston v. State,* 663 S.W.2d 455 (Tex.Crim.App.1984). No error is shown in overruling the second motion.

■ Next the Appellant argues that the Court committed error in giving a charge on the law of parties even though there was no such allegation in the indictment. We perceive no error. Under this record, it was certainly not error to give the charge that was given on the parties. *Pitts v. State,* 569 S.W.2d 898 (Tex.Crim.App.1978); *Gantz v. State,* 661 S.W.2d 213 (Tex.App.— San Antonio 1983, pet ref'd.).

■ The next error alleged is that the trial court gave the mandatory charge on the law of parole. We have passed on

many objections to this instruction; we have found them meritless. The instruction is constitutional. *John Pershing Johnson v. State,* 737 S.W.2d 923 (Tex. App.—Beaumont, 1987). *Boudreaux v. State,* 723 S.W.2d 230 (Tex.App.—Beaumont 1986, no pet.). *See also Rose v. State,* 724 S.W.2d 832 (Tex.App.—Dallas 1986, pet. granted).

The last point of error, being point of error number nine, states the trial court denied the Appellant a fair trial. Upon a review of the record, we simply do not agree and we overrule the final point.

The judgment and sentence below is affirmed.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent to the majority's disposition of the points of error relating to the jury charge pursuant to *TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4* (Vernon Supp.1987). Until settled by our Court of Criminal Appeals, I continue to dissent as noted in *Boudreaux v. State,* 723 S.W.2d 230 (Tex.App.—Beaumont 1986, no pet.). I would also hold, when necessary, that the instruction is so erroneous and violative of due process that it is fundamental error which rises to egregious harm under *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984).

Further, on the authority of *Meshell v. State,* 739 S.W.2d 246 (Tex.Crim.App. 1987), I would hold it unconstitutional as violative of the separation of powers doctrine.