Steven Michael
**THIBEADEAU, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–86–142–CR.**

Court of Appeals of Texas,
Beaumont.

Feb. 1, 1989.

William E. Hall, Jr., George E. Renneberg, Conroe, for appellant.

Michael R. Little, Anahuac, Steve Greene, Houston, for appellee.

OPINION ON REMAND

BROOKSHIRE, Justice.

Steven Michael Thibeadeau revisited. On remand from the Court of Criminal Appeals, 761 S.W.2d 22. The direct appeal was ruled upon by this Court. *See Thibeadeau v. State,* 739 S.W.2d 482 (Tex.App.—Beaumont 1987, pet. granted). The Court of Criminal Appeals, in a per curiam opinion, wrote:

"On direct appeal, appellant argued the trial court erred in instructing the jury on the law concerning good time and parole, inasmuch as the charge is predicated upon an unconstitutional statute. The court of appeals rejected appellant's challenge to Article 37.07, Sec. 4, V.A.C.C.P...."

The objections to the charge before the district judge, in substance, says that the charge on punishment is an incorrect statement of the law and that the charge gives the jury an opportunity to speculate with regard to the amount of time that would be served and that the same would have an effect of unduly prejudicing the jury in returning a verdict. The objections at trial do not contain any complaint that *TEX. CODE CRIM.PROC.ANN. Art. 37.07, sec. 4* (Vernon Supp.1987), is unconstitutional. Further, the charges given are not a verbatim recitation of *Art. 37.07, sec. 4.*

Nevertheless, the Court of Criminal Appeals recited in *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App.1988), that it determined that *Art. 37.07, sec. 4* was unconstitutional. Under *Rose, supra,* therefore, the Court of Criminal Appeals ordered our Court to conduct a "harmless error analysis," pursuant to the guidelines of *TEX.R.APP.P. 81(b)(2).* We do so, the judgment of our Court having been vacated.

Our task is not without difficulty. The car the Appellant was driving was clocked at 69 miles per hour. This resulted in a traffic stop. The vehicle was properly searched. After the traffic stop, the arresting trooper detected the smell of marihuana. In fact, the trooper testified that there was a strong odor or strong smell of marihuana. The trooper also definitely noticed marihuana particles, some marihuana seeds and a green leafy material on the floorboard of the vehicle. Also discovered during the search was an amount of cocaine said to be 82.63 grams or 2.9 ounces of 25% pure cocaine. The actions of the Appellant, during the traffic stop, were not hostile or aggressive.

The Appellant had a prior record of possession of marihuana. But the record discloses that he had been given a probationary sentence for the offense of possession of marihuana and the Appellant had apparently been able to substantially comply with the terms of probation until the present offense took place involving the 82.63 grams of cocaine. At the punishment stage, a number of witnesses testified favorably for the Appellant.

The Appellant testified that he was twenty-five years old and that he had graduated from high school in 1979. He had not attended a college or university. He had not attended a trade school. He was only nineteen when he moved to Houston. He had worked fairly constantly. He had been a welding trainee. He was currently employed in the construction and installation of rain gutters. He had held his present employment for about two years as a gutter installer. He had paid his bills with regularity. He was not married at the time but he had definite plans to marry. Apparently, he had been living with his fiancee who was definitely pregnant. He had paid the rent on the house wherein he and his fiancee had resided. The pregnancy had been confirmed by the doctor.

The Appellant, freely and with candor, admitted that he had been put on probation in Montgomery County for the possession of marihuana in September of 1982. He stated that he did not have any problems with his probation. He further admitted that the marihuana charge had been a felony possession charge involving possession of more than four ounces of marihuana. The mother of the young fiancee testified that Steven Thibeadeau had always been good and had acted like a son to her. It was her daughter, D.K., who was pregnant by Appellant. The expected child was to be born about six months after the hearing

on punishment. The mother had been visited by the Appellant quite a number of times. She had never observed any marihuana, or any other type of narcotic, on or about the Appellant. She knew, of her own personal knowledge, that Appellant and D.K. had seriously discussed getting married several times.

Appellant's employer testified favorably for him. The employer characterized Appellant as a good and responsible worker. Appellant seemed to stick with the business of gutter installation. The employer had visited in Appellant's home on many occasions. The employer wanted to keep Appellant as an employee.

D.K., the Appellant's fiancee, testified. She swore that Appellant did not do drugs and that they had been living together for about four years. She stated that Appellant treated her very well and showed that he cared very much about her.

The record before us makes it glaringly clear that Appellant's past record was totally dissimilar to that of *Rose, supra.* The actions and attitudes of Appellant, after the traffic stop, were dramatically different from the actions of Vernon Lee Rose. The record in Appellant's case is startlingly different from the narrative set out in *Rose, supra.*

Frankly, we can easily perceive that the jury in this matter reached the correct verdict. But following what is commonly known as *Rose II,* 752 S.W.2d at 552 (Tex. 1988) (Opinion on Court's Own Motion for Rehearing), and the dictates of the Court of Criminal Appeals therein, we are bound to apply the standards set out in *Rose II, supra,* and *TEX.R.APP.P. 81(b)(2).* We are bound by the Court of Criminal Appeals, but we are not gagged. The Court of Criminal Appeals simply forbids this jury's verdict to stand. Being tightly constrained by *Rose, supra,* and especially *Rose II, supra,* we are bound and obliged, as an intermediate appellate court, to adhere to *Rose, supra.* Hence, it cannot be said that the charge had *no effect whatsoever* on the punishment assessed. Hence, we must remand the punishment phase of the proceeding. Reversed and remanded

for new trial as to the punishment phase only.

The Court of Criminal Appeals, in vacating the judgment of our Court, made no complaint and found no error other than that *Art. 37.07, sec. 4* was unconstitutional. Hence, we hopefully assume that the Court of Criminal Appeals has approved our Opinion on all other alleged grounds of error.

REVERSED AND REMANDED.

BURGESS, Justice concurring.

I concur in the result. I do not join in the majority's implied, if not explicit, disdain for our court of criminal appeals' decision in *Rose v. State,* 752 S.W.2d 552 (Tex. Crim.App.1988) (opinion on court's own motion for rehearing). I find nothing difficult in being asked by our highest court to follow the Texas Rules of Appellate Procedure. As opposed to the majority, I do not "easily perceive that the jury in this matter reached the right verdict." What I do easily perceive is the verdict was reached by way of an unconstitutional instruction. Because the majority is correct in remanding for a new trial on punishment, I concur.