02-10-080-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00080-CR 

 

 


 
 
 William Berry Waters, III
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE
355th District Court OF Hood COUNTY

------------

OPINION

----------

I. 
Introduction

          Appellant William Berry Waters, III,
appeals his sentence for felony driving while intoxicated (DWI), contending in
five points that the prosecutor’s remarks during closing argument at the
punishment phase warrant a new punishment hearing.  We affirm.

II. 
Background

          The indictment charging Appellant with
felony DWI included an enhancement paragraph alleging that he had a prior
felony DWI conviction, and a habitual offender paragraph alleging that he had
still another prior conviction for felony DWI. 
After the jury returned a guilty verdict in the instant case, the
court’s charge on punishment instructed the jury that the applicable range of
punishment was confinement for twenty-five years to ninety-nine years or
life.  See Tex. Code Crim. Proc. Ann. art.
37.07, § 4 (b) (Vernon Supp. 2010).  The charge also included statutorily required
good conduct and parole instructions, advising the jury that the actual time
Appellant served in prison could be reduced by the award of good-conduct time
or by the award of parole; that Appellant would not become eligible for parole
until the actual time served plus any good-conduct time earned equaled the
lesser of one-fourth of the sentence imposed or fifteen years; and that parole
eligibility does not mean that parole will be granted.  See id.  The prosecutor addressed these instructions
in his closing argument at punishment. 
The jury assessed punishment at sixty years’ confinement, and the trial
court sentenced Appellant accordingly.

          In five points on appeal, Appellant
contends that the trial court erred by overruling his objections to several of
the prosecutor’s remarks during closing argument at punishment.

III.  Remarks About Parole Instructions

           In his first point, Appellant claims that the
prosecutor’s remarks, reproduced below, improperly urged the jury to consider
how the parole laws would be applied specifically to him. The record
transcribed during the initial portion of the State’s closing argument at
punishment includes the following:

          [PROSECUTOR]: . . . So what do we do
here?  This whole thing about parole,
it’s in your charge.  I want you to -- --
to look at this.  It says, “Under the law
applicable in this case, the defendant, if sentenced to a term of imprisonment,
may earn time-off a period of incarceration imposed through the award of good[-]conduct time.” 
That means -- --

 

          THE COURT:  Three minutes, counsel.

 

          [PROSECUTOR]:  Thank you.

 

          That means if he’s a good prisoner, if
he goes down and does what he’s supposed to do, he can get extra credit.  He also gets good time for any time he’s
already served up until this point since this case has happened.  All right?  And it says that when the actual time that he
serves plus the good-conduct time equals one-fourth of whatever sentence that
he gets, then he’ll be eligible for parole. 
That doesn’t mean he’ll get it, but he’ll be eligible for parole.

 

          It also says that the -- -- when it
equals one-fourth of the sentence imposed, or 15 years, whichever is less, that
means if you give him anywhere from 60 to 99 years, he becomes eligible for
parole after 15 years.  Okay?  And that includes good-conduct time.  So if
he has good-conduct time that gives him extra credit, he might -- --  it’d be less than
15 years.  Okay?  You understand that?

 

          All right.  So the reality of the situation is, if you give him 60 years or more, you’re doing all that
you can do.  The question is -- --

 

          [DEFENSE COUNSEL]:  Hold on a minute.  Judge, I’m going to object to that.  That violates the -- the -- -- the charge of
the Court.  That’s not to be considered
by the jury, and I object to counsel arguing that.

 

                   THE COURT:  Overruled.

          

[PROSECUTOR]:  The question is, “what statement do you want to make?”

 

(emphasis added).

 

          Appellant contends that the italicized
remarks were improper because they specifically invited jurors to consider the
application of the parole law to him.  

          In its response, the State contents
itself to stand mute on the merits while arguing procedural default and
harmless error.  We are not persuaded by
the State’s preservation arguments, and, despite the State’s underwhelming
silence on the merits, because of our disposition below, we need not address
harm.

          The State first argues that
Appellant’s objection was too general to preserve his complaint for review
because he did not object that the prosecutor improperly urged the jury to
apply the parole laws specifically to him; instead he objected that the
argument violated the court’s charge and was something the jury could not
consider.  The State cites examples of
cases wherein, after having overruled objections, trial courts uttered
something on the record positively evincing their understanding of what the
objections were about.  But our rules of
error preservation require no such affirmative declarations by trial
courts.  At most, a trial court need only
rule on an objection, either
expressly or implicitly.  Tex. R. App. 33.1(a)(2)(A).  Moreover, even an imprecise objection
preserves error when “the specific grounds were apparent from the
context.”  Tex. R. App. P. 33.1(a)(1)(A);
see Taylor v. State, 939 S.W.2d 148,
155 (Tex. Crim. App. 1997) (“Where the record makes clear that the trial court
understood an objection and its legal basis, a trial court’s ruling on that
objection will be preserved for appeal, despite an appellant’s failure to
clearly articulate the objection.”).  As
the court of criminal appeals has made abundantly clear:

As regards specificity, all a party has to do to avoid
the forfeiture of a complaint on appeal is to let the trial judge know what he
wants, why he thinks himself entitled to it, and to do so clearly enough for
the judge to understand him at a time when the trial court is in a proper
position to do something about it. Of course, when it seems from context that a
party failed effectively to communicate his desire, then reviewing courts
should not hesitate to hold that appellate complaints arising from the event
have been lost. But otherwise, they should reach the merits of those complaints
without requiring that the parties read some special script to make their
wishes known.

Lankston v. State,
827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

          Here, as the prosecutor discussed the
paragraphs concerning parole laws in the court’s charge, Appellant objected,
“That violates the -- the -- -- the charge of the Court.  That’s not to be considered by the jury, and
I object to counsel arguing that.”  The
objection is quite specific.  In context,
we think the trial court understood the objection as a complaint that the
prosecutor’s comments urged the jury to stray from the charge’s instructions
that it was not to consider how the parole laws might be applied to Appellant. 

          The State next argues that the
objection does not comport with Appellant’s point on appeal.  We have already held that Appellant’s
objection, “That violates the . . . charge of the court” was sufficient to
inform the trial court and the prosecutor the nature of Appellant’s
complaint.  Appellant’s point on appeal
is that the prosecutor’s remarks urged the jury to apply the parole laws
specifically to him, which Appellant contends violated the court’s charge not
to consider the manner in which the parole law may be applied to him.  This sufficiently comports with Appellant’s
objection at trial.  See Tex. R. App. P. 38.9.

          Finally, the State draws upon cases
holding that opponents to the admission of evidence
must continue to object when similar evidence
is offered at the risk of forfeiting any claims based on the trial court’s
admission of evidence to argue that
failure to keep objecting to similar arguments
also forfeits error.  We need not decide
whether rules that apply to preserving complaints about evidence properly apply
to those about argument because we find nothing objectionable in the arguments
that the State claims Appellant should have objected to in order to preserve
his complaint about the arguments he did object to. 

          To conclude, we hold that Appellant
has preserved his first point for review. 
Therefore, we will consider its merits.

          In support of his contention that the
prosecutor improperly urged the jury to consider how the parole laws would be
applied specifically to him, Appellant relies on the reasoning and analysis of
three cases from our sister courts––Chester
v. State, 167 S.W.3d 935 (Tex. App.—Amarillo 2005, pet. ref’d);
Perez v. State, 994 S.W.2d 233 (Tex.
App.—Waco 1999, no pet.); and Facundo v. State,
971 S.W.2d 133 (Tex. App.—Houston [14th Dist.] 1998, pet. ref’d).

          In Chester,
during closing argument at punishment the prosecutor remarked, “If there is a
20 year sentence, Mr. Chester will not become eligible for parole until his
actual time served, plus whatever credit they give him for good time served,
equals 5 years . . . .”  167 S.W.3d at 936. 
The Seventh Court of Appeals, after lauding the State for conceding
error, held that the remarks were harmful, and remanded for a new punishment
hearing.  Id. at 936–38.

          In Perez,
the Tenth Court of Appeals held that the remarks, “anything you give him over 60 years, he’s eligible for parole after 30 years” and that asking the jury
to “set the proper sentence” based on this information improperly encouraged
the jury to consider the effects of parole on Perez’s punishment and were
therefore improper.  994
S.W.2d at 237 (emphasis in original). 

          And in Facundo, the Fourteenth Court of
Appeals held that the trial court properly sustained the State’s objections to
defense counsel’s arguing at punishment, “But when you examine what Our Honor told you
on the parole factor, remember this and read the law here, and basically what
this says is:  For example, if you assess ten years in prison, what it says here, he’s
got to serve five years flat” and “if the
defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served
equals one-half of the sentence imposed. 
So you can do simple mathematics
on that.”  971
S.W.2d at 135–36 (emphasis in original).

          The reasoning in these cases may be
traced to one of ours.  See Chester, 167 S.W.3d at 937 (citing Facundo, 971 S.W.2d at 135–36); Perez,
994 S.W.2d at 237 (citing Taylor v. State,
911 S.W.2d 906, 912, 914 (Tex. App.—Fort Worth, 1995, pet. ref’d);
Facundo,
971 S.W.2d at 136 (citing Taylor, 911 S.W.2d at 911). 
In Taylor, a panel of this
court held that closing arguments at the punishment phase were proper because
the prosecutor did not make any attempt to apply the parole instructions in the
charge specifically to the defendant.  911 S.W.2d at 912.  We
observed that while counsel may explain the existence of parole rules as set
out in the charge, generally, counsel must take caution to avoid applying those
rules specifically to the defendant on trial. 
Id. at 911.

          We are not, of course, bound by the
decisions of our sister courts, generally, or by our own, particularly, when it
becomes apparent that our reasoning was unsound.  And it should go without saying that we
cannot follow our earlier decisions when they are later overturned, explicitly
or otherwise, by the court of criminal appeals. 

          The reasoning these cases relied upon,
and upon which Appellant now seizes, appears not to have survived the court of
criminal appeals’ more recent decision in a case also styled Taylor v. State, and found at 233 S.W.3d
356 (Tex. Crim. App. 2007).  In that Taylor, the court of criminal appeals
held that it was not improper for prosecutors to explain how the parole
eligibility rules set out in jury charges applied to certain sentences and to
specific defendants.  Id. at 358–59.  There, the appellant had complained of
remarks made by the prosecutor that bear a striking resemblance to those that
the Amarillo Court of Appeals held improper in Chester: 

A 40-year sentence
means the defendant becomes eligible for parole after serving 20 years.

 

. . . .  

 

A 60-year sentence
means he becomes eligible after serving 30 years.  A sentence of life or 75 still means he
becomes eligible after 30 years.

 

Id. at
358–59.  

          Judge Keller wrote for the majority
that the issue was “whether it was improper for [the prosecutor] to explain how
these parole eligibility rules applied to certain sentences, and also whether
[the prosecutor] stepped over the line by incidentally referring to ‘the
defendant’ and ‘he’ in his explanation.” 
Id. at 358.  The court of criminal appeals answered both
questions “no,” reasoning that:

In Hawkins v. State, [135 S.W.3d 72, 84
(Tex. Crim. App. 2004)] we explained that “[i]t was
not improper for the prosecutor to accurately restate the law given in the jury
charge.” [footnote omitted]  In the case before us, the prosecutor did not
convey any information beyond what was properly contained in the charge when he
explained how the parole eligibility rules set out in the charge worked with
forty, sixty and seventy-five year sentences. 
The explanation simply ensured that the jury understood the language set
out in the instructions.  Nor do we
ascribe any significance to the prosecutor’s passing use of the words
“defendant” and “he” in the course of giving his explanation.  The statutory instruction itself uses the
words “defendant” and “he” when describing the rules of parole
eligibility.  Nothing in this case
indicates that the prosecutor’s explanations went beyond an attempt to clarify
the meaning of the jury instructions.

 

Id. at
359.

          Judge Womack, joined by Judges Meyers
and Price, concurred, opining that the reason the prosecutor’s remarks were not
error was explained by Justice Frost in another concurring opinion.  Id.
at 360 (Womack, J., concurring) (citing Byrd
v. State, 192 S.W.3d 69, 72 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d) (Frost, J., concurring).  Judge Womack quoted Justice Frost
approvingly:

[I]n cases involving
an article 37.07, section 4(a) jury instruction,[[1]]
the jury may base its assessment of punishment in part on consideration of a
sentenced defendant’s parole eligibility under the formula contained in the
instruction; however, a jury may not base its assessment of punishment on
speculation as to when, if ever, the defendant may be released on parole after becoming
eligible for parole.  Therefore, the jury
instruction in article 37.07, section 4(a) that the jury is “not to consider
the manner in which the parole law may be applied to this particular defendant”
refers to speculation about when, if ever, this particular defendant might be
released on parole.  It does not refer to
the jury’s consideration of a sentenced defendant’s parole eligibility under
the formula contained in the instruction. 


 

Id. at 360 (Womack, J.,
concurring) (quoting Byrd, 192 S.W.3d
at 72 (Frost, J., concurring) (citations omitted)).

          This is sound reasoning.  A jury must base its punishment decision upon
the evidence before it.  It may not base
its decision on evidence that may or may not exist at some point in the
future.  There will never be evidence at
trial of whether prison authorities will extend or withdraw good-conduct time
to a particular defendant because those decisions will be made, if ever, by
prison authorities after
that convicted defendant begins
serving his sentence.  Thus, juries
properly are instructed not to consider “the extent to which good[-]conduct
time may be awarded to or forfeited by this particular defendant.”  Tex. Code Crim. Proc. Ann.
art. 37.07, § 4.  Likewise, there will never be evidence at
trial of how parole authorities will apply parole laws to decide whether a
particular defendant will be awarded parole because those laws are applied after that convicted defendant becomes
eligible for parole.  Thus, juries
properly are instructed that they “are not to consider the manner in which the
parole law may be applied to this particular defendant.”  Id.  Any consideration at trial of whether the
defendant would be awarded or would forfeit good-conduct time or how the parole
laws would be applied to him would necessarily be based on speculation.  That is why such consideration, properly, is
prohibited.  

          But juries are not instructed not to
use the parole eligibility instructions in the charge to fashion a sentence
that ensures that defendants will become eligible at the most distant possible
date.  To impose such a prohibition is
inconsistent with the instruction itself. 
Equating the prohibition of inviting speculation as to when a specific
defendant might be paroled with one that seeks to prevent juries from using the
formula they are given in the charge to affect parole eligibility leads to the
absurd expectation that juries can consider the existence of good-conduct time,
and how that works into the formula for determining parole eligibility but
still refrain from applying that formula in working out an appropriate
punishment.  

          What a jury can properly do, in
following the charge, is determine how long a term it wishes a defendant to
serve before that defendant may become eligible
for parole because the jury is instructed on good-conduct time and is furnished
the formula for determining eligibility. 
See id.  A jury, however, may not consider when, if
ever, that defendant actually might be awarded
parole (it must disregard whether the defendant will receive or forfeit good-conduct
time and whether he will be awarded parole).  See
Turner v. State, 87 S.W.3d 111, 116 (Tex. Crim.
App. 2002), cert denied, 538 U.S. 965
(2003).  These are distinct issues one of
which is properly placed into the hands of jurors, to some degree, and the
other of which is properly in the hands of officials in whose keep the
defendant is placed after the jury has done its part in sentencing.  

          Here, Appellant complains of the
remark, “So if he has good-conduct time
that gives him extra credit, he might -- --  it’d be less than 15 years.  Okay? 
You understand that?”  But the
charge states that “the defendant, if sentenced to a term of imprisonment, may
earn time off the period of incarceration imposed through the award of good[-]conduct time” and that “he will not become eligible
for parole until the actual time served plus any good[-]conduct time earned
equals one-fourth of the sentence imposed or fifteen (15) years, whichever is
less.”  The highlighted portions of the
prosecutor’s remarks were nothing more than accurate restatements of the
instructions in the charge.  In
explaining how a sixty-year sentence would work, he said, “So if he has good-conduct time that gives him extra credit, he might --
-- it’d be less than 15 years.”  We
hold that there is no error in this part of the argument.

          Appellant also complains of the
remark, “So the reality of the situation
is, if you give him 60 years or more, you’re doing all
that you can do.”  This,
too is true to the charge.  One-fourth of
sixty is fifteen.  Because the charge states
that Appellant would become eligible for parole when any accrued good-conduct
time and actual time served reached one-fourth of the sentence or fifteen
years, whichever is less, any
sentence beyond sixty years does not affect when Appellant would become parole
eligible under the formula in the charge. 
From the perspective of a jury that might wish to assure that Appellant
stay incarcerated for as long as possible, a sentence of sixty years is all
that jury can do. 
In so doing, it does not resort to speculation about how much, if any,
good-conduct time appellant might receive or forfeit or whether he might be
released early on parole, it merely applies the mathematical formula in the
charge.  Certainly a prosecutor is
entitled to argue for a stiff sentence. 
And indeed, it has been noted that the purpose of the Legislature’s change
in the statute to allow juries to consider the existence of good-conduct time
and release on parole was to produce longer sentences.  See Grigsby v. State, 833 S.W.2d 573, 573–76 (Tex. App.—Dallas
1992, pet. ref’d); Parker v. State, No. 08-03-00172-CR, 2004 WL 2113050, at *11 (Tex.
App.—El Paso Sept. 23, 2004, no pet.) (not
designated for publication).

          In conclusion, we hold that the
prosecutor’s remarks accurately restated the law given in the jury charge.  See
Taylor, 233 S.W.3d at 359.  Nor was there any error in referring
specifically to Appellant.  See id. 
The prosecutor did not convey any information beyond what was properly
contained in the charge, and he did not urge the jury to make a decision on
punishment based on speculation of matters that were not properly before
it.  See
id.; Hawkins, 135
S.W.3d at 84. 

IV.  Remarks Appellant
Claims Were Outside the Record

 

          In points two through five, Appellant
complains that the following remarks from the State’s closing argument at the
end of the punishment phase were outside the record:

[THE
PROSECUTOR]:  Because no matter what you
give him, you can’t guarantee when he’s next going to be out there, drinking
and driving.  That’s the reality of the
situation.

 

And you know
what?  He hasn’t hurt anybody yet.  And - - and that has to be said.  What if
it had been a little girl or boy standing on the corner instead of just a curb?

          

[Appellant’s
objection to “counsel arguing facts that are not in evidence” overruled.]
(Emphasis as given in Appellant’s brief).

 

[THE
PROSECUTOR]:  I do feel sorry for this
[Appellant’s] family.  But you know
what?  Every day that he’s in the
penitentiary, they’re going to know that he’s safe, that he’s not out there
about to kill himself out on the roads, or kill somebody else, they’re going to
know exactly - -

 

[DEFENSE
COUNSEL]:  Judge, whoa, whoa, whoa,
whoa.  I’m going to object to - - I’m
going to object to that.  That’s improper
argument about this defendant killing somebody. 
Now, that is not base - - that is not the evidence in this case, and I
object to it.

 

[Objection
overruled.]

 

[THE
PROSECUTOR]:  And when he goes down to
the penitentiary, what message does he carry with him?  “Oh, I was arrested six times for DWI,
convicted five times, and they gave me the minimum sentence.”  I can’t - - I can’t in good conscience agree
that that’s the right thing to do.

 

THE COURT:  Two minutes, counsel.

 

[THE
PROSECUTOR]:  The reality of the situation is I cannot live with myself if one day a
few years later from now I picked up the paper and I saw that this man had run
over somebody and killed them.

 

[DEFENSE
COUNSEL]:  Now Judge, wait a minute, I’m
going to object to that.  That is
absolute speculation, surmise and suspicion of this lawyer, not based on one
fact in this evidence and I object to it.

 

THE COURT:  Overruled.

 

[DEFENSE
COUNSEL]:  I specifically object to
running over and killing somebody in the record.

 

(Emphasis as given in
Appellant’s brief).

 

[THE
PROSECUTOR]:  I could not live with myself if I picked up the paper and read
something like that, even if he had run off the road in a ditch and killed
himself - -

 

[DEFENSE
COUNSEL]:  Object, Judge - -

 

[PROSECUTOR]:  - -when
he could have been - -

 

[DEFENSE
COUNSEL]:  I object for the same reason,
on speculation, surmise - -

 

[Running objection
granted.] 

 

- - when he could
have been safe and sound somewhere else, somewhere his family can visit him.

 

I ask that you give
him 60 years.  That’s my recommendation,
because by doing that, you’re putting him away for as long as you can, but
you’re not telling him he’s a bad person, you’re keeping our community safe,
and you’re sending a message with him that we will not tolerate this type of
behavior, “we will not tolerate this type of behavior.”

 

(Emphasis
as given in Appellant’s brief).

          Appellant contends that by overruling
his objections, the trial court erred because the prosecutor improperly argued
matters outside the record.[2]  

          In Strahan v. State, the court of criminal appeals held that the prosecutor’s
remarks during closing argument in a DWI trial, “When you and your family are
on these highways driving you can’t help but sometimes wonder if some drunk
driver is going to hit you, run over you and kill you,” was an appeal for
strict law enforcement and presented no error. 
358 S.W.2d 626, 627 (Tex. Crim. App. 1962).  Similarly, the court of criminal appeals held
that the argument, “And I ask you to find the defendant guilty and all those like
him because we are all going to get in our cars, and we are going to go home”
was “nothing more than a plea for law enforcement.”  Nichols v. State, 504 S.W.2d 462, 465 (Tex. Crim. App. 1974).


          In Pittman
v. State, the appellant in a DWI trial had been stopped after driving
through a traffic light four seconds after it turned red; but there was no
evidence that he had injured anyone.  9 S.W.3d 432, 434 (Tex. App.—Houston [14th Dist.] 1999, no pet.)  Several times during closing argument, the
prosecutor remarked to the effect that the appellant “is going to kill someone
some day.” Id.  The prosecutor also argued that prison is
“one place where we know that he can’t go kill someone.”  Id.  The Fourteenth Court of Appeals held that
“the seven statements relating to appellant killing another person” were all
“proper pleas for law enforcement.”  Id.

          In
Yocom v. State, we held that where, although
there was no evidence in the appellant’s DWI trial that he had injured anyone,
the prosecutor’s remark, “He made it somehow to Euless.  Are we lucky nobody died?  Yes, we are” was a reasonable deduction from
the evidence where the evidence showed that the appellant had admitted drinking
at a bar in Dallas, was extremely intoxicated, and had pulled over in Euless because
he was not feeling well.  No. 02-03-00181-CR, 2004 WL 742888, at *1, *12 (Tex. App.—Fort
Worth Apr. 8, 2004, pet. ref’d) (not designated for
publication).

          And finally, in Bobbit v. State, we held that the prosecutor’s argument in a DWI trial
that drunk drivers like the defendant injure or kill innocent people was an
unobjectionable plea for law enforcement as well as a reasonable deduction from
the evidence.  No.
02-01-00506-CR, 2003 WL 21197606, at *1 (Tex. App.—Fort Worth May 22, 2003, no
pet.) (mem. op., not
designated for publication). 

          Based on these precedents, we hold
that the prosecutor’s remarks in this case referring to the risks of injury or
death imposed by drunk drivers, regardless of the lack of evidence in the
record that someone was injured or killed, are proper pleas for law
enforcement. 

          Furthermore, the remarks were proper
responses to arguments made by opposing counsel.  Before the remarks of which Appellant
complains, Appellant’s counsel had argued, “There’s no evidence in this case
that Berry Waters ever hurt anybody. 
Berry Waters is not a murderer, he’s not a rapist, he hasn’t abused your
children or mine, he hadn’t committed sexual assaults, he hadn’t done all the things
that - - he’s not a pedophile.  He hasn’t
done those kind[s] of things that I tell you that
justify, in my opinion, a long-term prison sentence.”  He also argued, “And I’ll say to you on
behalf of this [Appellant’s] family, please don’t punish Berry for being some
kind of criminal.  Please don’t punish
him for being some kind of a violent guy that you’re afraid to put back on the
streets of the community.”  Given
Appellant’s counsel’s argument that Appellant didn’t deserve a long prison term
because he didn’t hurt anybody, the prosecutor’s remarks were proper
responses.  See Borjan v. State, 787
S.W.2d 53, 55 (Tex. Crim. App. 1990). 
Accordingly, we overrule points two through five.

V.  Conclusion

          Having overruled all of Appellant’s
points, we affirm the trial court’s judgment.

 

LEE GABRIEL

JUSTICE

 

PANEL:  DAUPHINOT, WALKER,
and GABRIEL, JJ.

 

DAUPHINOT,
J., filed a dissenting opinion.

 

PUBLISH

 

DELIVERED:  November 4, 2010




 

 

 



COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT
WORTH

 

NO. 02-10-00080-CR

 

 


 
 
 WILLIAM BERRY WATERS, III
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 355TH DISTRICT COURT OF HOOD
COUNTY

 

------------

 

DISSENTING
OPINION

 

------------

          I agree with the majority that it is
”absurd” to expect “juries [to] consider the existence of good-conduct time[]
and how [it factors] into the formula for determining parole eligibility but
still refrain from applying that formula in [determining] an appropriate
punishment.”[3]  It is particularly absurd when the State’s
jury argument dwells on computing the mathematics of parole law as applied to
the specific defendant:

So if
he has good-conduct time that gives him extra credit, he might — — it’d be less
than 15 years.  Okay?  You understand that?

All right.  So the reality of the situation is, if you give him 60 years or more, you’re doing all that
you can do.

          The Texas Court of Criminal Appeals
has instructed us that the jury is “not to consider the manner in which the
parole law may be applied to [a] particular defendant” but that it is perfectly
acceptable for the jury to consider how the parole law applies to the
particular defendant by deciding the earliest date on which the jury wants the
particular defendant to first become eligible for parole.[4]  Rather than play semantic games, we should
look to the plain meaning of the statute.[5]  But it makes no sense:

          In the
penalty phase of the trial of a felony case in which the punishment is to be
assessed by the jury rather than the court, if the offense is punishable as a
felony of the first degree, if a prior conviction has been alleged for
enhancement of punishment as provided by Section 12.42(b), (c)(1) or (2), or
(d), Penal Code, or if the offense is a felony not designated as a capital
felony or a felony of the first, second, or third degree and the maximum term
of imprisonment that may be imposed for the offense is longer than 60 years,
unless the offense of which the jury has found the defendant guilty is an
offense that is punishable under Section 21.02(h), Penal Code, or is listed in
Section 3g(a)(1), Article 42.12, of this code or the judgment contains an
affirmative finding under Section 3g(a)(2), 
Article 42.12, of this code, the court shall charge the jury in writing
as follows:

          Under
the law applicable in this case, the defendant, if sentenced to a term of
imprisonment, may earn time off the period of incarceration imposed through the
award of good conduct time.  Prison
authorities may award good conduct time to a prisoner who exhibits good behavior,
diligence in carrying out prison work assignments, and attempts at
rehabilitation.  If a prisoner engages in
misconduct, prison authorities may also take away all or part of any good
conduct time earned by the prisoner.

          It
is also possible that the length of time for which the defendant will be
imprisoned might be reduced by the award of parole.

          Under
the law applicable in this case, if the defendant is sentenced to a term of
imprisonment, he will not become eligible for parole until the actual time
served plus any good conduct time earned equals one-fourth of the sentence
imposed or 15 years, whichever is less. 
Eligibility for parole does not guarantee that parole will be granted.

          It
cannot accurately be predicted how the parole law and good conduct time might
be applied to this defendant if he is sentenced to a term of imprisonment,
because the application of these laws will depend on decisions made by prison
and parole authorities.

          You
may consider the existence of the parole law and good conduct time.  However, you are not to consider the extent
to which good conduct time may be awarded to or forfeited by this particular
defendant.  You are not to consider the
manner in which the parole law may be applied to this particular defendant.[6]

           The legislature could solve the problem by
admitting that it wants the jury to consider how the parole law might apply to
a particular defendant and by expressly allowing evidence and argument on
parole eligibility.  Or the legislature
could remove its mandate requiring the nonsensical jury instruction and state
clearly that parole should not be placed before the jury because the jury’s
function is to decide the appropriate sentence for the defendant based on the
facts of the case as they stand on the day of trial.  But courts should not expand or contract the
clear language of a statute, no matter how nonsensical it may be.

          To say that a jury who is urged to
consider a particular defendant’s parole eligibility date is not considering
how the parole law applies to that particular defendant defies any rational
thought.  I am aware that this court is
required to follow the precedent of the Texas Court of Criminal Appeals,[7] and I
realize that the majority does exactly what it is required to do in following
that precedent.  But because the
reasoning and the result so directly conflict with the clear legislative
mandate, conscience requires that I respectfully dissent.

 

 

                                                                             LEE
ANN DAUPHINOT

                                                                             JUSTICE

 

PUBLISH

 

DELIVERED: November 4, 2010











[1]The
instructions in sections 4(a) and 4(b), which applied in the instant case, are
practically identical.  They differ in
that 4(a) states that parole eligibility occurs when actual time served equals
the lesser of one-half of the sentence imposed or 30 years, without
consideration for good conduct time, whereas 4(b) states that eligibility
occurs when actual time plus any good-conduct time equals the lesser of
one-fourth of the sentence imposed or 15 years. 
Compare Tex.
Code Crim. Proc. Ann. art. 37.07, § 4(a) with id. at § 4(b).





[2]To
the extent that Appellant’s complaint is that the prosecutor’s remarks to the
effect that he could not live with himself if he read that Appellant had killed
someone improperly injected the prosecutor’s personal opinion, we hold that
Appellant’s objections at trial preserved only his claim that the prosecutor
improperly urged the jury to speculate about evidence not in the record; i.e.,
that someone could have been injured or killed.  See Tex.
R. App. P. 33.1(a)(1)(A); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on
reh’g), cert.
denied, 526 U.S. 1070 (1999); Bell v.
State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 827 (1997).





[3]Majority op. at 11.





[4]See Taylor v. State, 233 S.W.3d 356, 360
(Tex. Crim. App. 2007) (Womack, J., concurring) (quoting Byrd v. State, 192 S.W.3d 69, 76 (Tex. App.—Houston [14th Dist.]
2006, pet. ref’d) (Frost, J., concurring)).





[5]See Tex. Code Crim. Proc.
Ann. art. 37.07, §
4(b) (Vernon Supp. 2010).





[6]Id.





[7]See Taylor, 233 S.W.3d at 359.